880 F.2d 265
 Jack J. MITCHELSON, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Respondents,
and
Kemmerer Coal Company and Bituminous Casualty Corporation,
Real Parties in Interest and Respondents.
 No. 87-2408.
 United States Court of Appeals,
Tenth Circuit.
 July 18, 1989.
 
 Thomas E. Cahill, Cheyenne, Wyo., for petitioner.
 Ronald E. Gilbertson of Kilcullen, Wilson and Kilcullen, Washington, D.C., for Kemmerer Coal Co. and Bituminous Cas. Corp., real parties in interest and respondents.
 George R. Salem, Sol. of Labor, Donald S. Shire, Associate Sol., Sylvia T. Kaser, counsel for appellate litigation, and Roscoe C. Bryant, III, Atty., U.S. Dept. of Labor, Office of the Solicitor, Washington, D.C., for the Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor, respondents.
 Before LOGAN, BRORBY and McWILLIAMS, Circuit Judges.
 McWILLIAMS, Circuit Judge.
 
 
 1
 This is a black lung case where the Benefits Review Board affirmed the Administrative Law Judge's Decision and Order denying benefits. Pursuant to section 21(c) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. Sec. 921(c), as incorporated by subsection 422(a) of the Black Lung Benefits Act, 30 U.S.C. Sec. 932(a), claimant has filed a petition to review the Benefits Review Board's Decision and Order. On review, we affirm.
 
 
 2
 On September 28, 1979, Jack Mitchelson filed an application for benefits under the Black Lung Benefits Act, 30 U.S.C. Secs. 901-945. Mitchelson had started work in a coal mine in 1941, at the age of eighteen. He worked underground until 1960, when he was moved to surface work in a shop where mining machinery was repaired, in which capacity he remained until 1972, when he quit. During that twelve-year period, that is, 1960-1972, Mitchelson occasionally went down into the mine proper. As indicated, in 1972, he quit his employment with the coal company to go into business for himself. He bought a back hoe and later a dump truck and did "free-lance" ditch digging from 1972 until 1980.
 
 
 3
 In 1980, Mitchelson developed a heart blockage which required triple bypass surgery. He has done no work since that date. In 1981, Mitchelson had a cancerous lymphoma removed from his cecum.
 
 
 4
 In 1979, Mitchelson's claim for black lung benefits was reviewed by the Department of Labor, resulting in an initial finding of entitlement, and Kemmerer Coal Company was notified of its potential liability as the responsible operator. Kemmerer Coal Company controverted the Department of Labor's initial finding and a formal hearing was held in Green River, Wyoming, Administrative Law Judge George P. Morin presiding. At that hearing Mitchelson, represented by counsel, testified at length. Kemmerer Coal Company, through counsel, participated in this hearing and called one witness, a Dr. Lawrence Repsher, an expert in the field of pulmonary medicine, who was a licensed physician in Colorado and was practicing at Lutheran Hospital, Denver, Colorado. Numerous documents, including medical and hospital reports, were also received into evidence.
 
 
 5
 The Administrative Law Judge found that Kemmerer Coal Company was the last employer of Mitchelson for at least one year and, therefore, was the properly designated "responsible coal mine operator" under the Black Lung Benefits Act. In denying benefits the Administrative Law Judge first held that Mitchelson, having engaged in coal mining for more than ten years, was, under 20 C.F.R. Sec. 727.203(a), entitled to an "interim presumption" that he was "totally disabled due to pneumoconiosis."[1] Under that regulation, when a miner has more than ten years employment in coal mines, a presumption of total disability due to pneumoconiosis arises, if any one of four "medical requirements" provided in the regulation is met.[2] Specifically, the Administrative Law Judge found that the medical requirements set out in subsections 727.203(a)(1) and (4) were not met by Mitchelson, but that the medical requirements set out in 20 C.F.R. Sec. 727.203(a)(2) were met, to the end that Mitchelson was entitled to the presumption of total disability due to pneumoconiosis.
 
 
 6
 20 C.F.R. Sec. 727.203(b) lists four ways a coal mine operator may rebut the interim presumption. Section 727.203(b) states that the presumption created in section 727.203(a) shall be rebutted if:
 
 
 7
 (1) The evidence establishes that the individual is, in fact, doing his usual coal mine work or comparable and gainful work (see Sec. 410.412(a)(1) of this title); or
 
 
 8
 (2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work (see Sec. 410.412(a)(1) of this title); or
 
 
 9
 (3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment; or
 
 
 10
 (4) The evidence establishes that the miner does not, or did not, have pneumoconiosis.
 
 
 11
 As concerns Kemmerer's "rebuttal" under this section, the Administrative Law Judge held that Mitchelson's interim presumption of total disability due to pneumoconiosis had been rebutted by Kemmerer under subsections 727.203(b)(2) and (b)(4). In support of such determination, the Administrative Law Judge reviewed, in detail, the evidence, both testimonial and documentary, and gave his reasons for believing certain testimony and reports over others.
 
 
 12
 In an unpublished decision, the Benefits Review Board affirmed the Administrative Law Judge's finding that Kemmerer had rebutted Mitchelson's interim presumption under the provisions of subsection 727.203(b)(2), and on that basis affirmed the Administrative Law Judge's denial of benefits. The Benefits Review Board did not consider the additional finding of the Administrative Law Judge that Kemmerer had also rebutted Mitchelson's interim presumption under subsection 727.203(b)(4). It is from the Benefits Review Board's Decision and Order that Mitchelson has filed his petition for review.
 
 
 13
 Our scope of review of the Decision and Order of the Benefits Review Board is a limited one. In reviewing a decision of the Benefits Review Board, we must determine if the Board correctly found that the Administrative Law Judge's decision was supported by substantial evidence and was in accord with the statutory and regulatory law. American Coal Co. v. Benefits Review Board, United States Dept. of Labor, 738 F.2d 387, 391 (10th Cir.1984) (citing Peabody Coal Co. v. Benefits Review Board, 560 F.2d 797, 799 (7th Cir.1977)).[3]
 
 
 14
 At the outset we note that the purpose of the Black Lung Benefits Act is to provide benefits to coal miners who are "totally disabled due to pneumoconiosis arising out of employment in one or more of the Nation's coal mines...." 30 U.S.C. Sec. 901. So, to establish entitlement to black lung benefits a coal miner must prove: (1) total disability due to; (2) pneumoconiosis; and (3) arising out of coal mine employment. A miner must prove all three requirements; two out of three are not enough to entitle one to black lung benefits.
 
 
 15
 As stated above, the Administrative Law Judge held that Mitchelson was entitled to an interim presumption that he was totally disabled due to pneumoconiosis arising out of coal mine employment by meeting the medical requirements set forth in subsections 727.203(a)(2) and (3), "ventilatory studies" and "blood gas studies," respectively. The Administrative Law Judge specifically found that Mitchelson had failed to meet the medical requirements contained in subsections 727.203(a)(1) and (4), x-rays and "other medical evidence," respectively.
 
 
 16
 Under 20 C.F.R. Sec. 727.203(b), the interim presumption is not a conclusive presumption and may be rebutted by the employer in any one of four ways: (b)(1) showing that the miner is in fact doing his usual coal mine work, or comparable work; (b)(2) showing that the miner could do his usual coal mine work, or comparable work; (b)(3) showing that the total disability of the miner did not arise, either in whole or in part, out of coal mine employment; or (b)(4) showing that the miner does not even have pneumoconiosis.
 
 
 17
 Mitchelson, at the time of the hearing in 1984, was not performing any work and had not been gainfully employed since 1980, therefore, the Administrative Law Judge found that (b)(1) was inapplicable. The Administrative Law Judge found that the operator had met the requirements of (b)(2) and (b)(4) and that it was therefore unnecessary to consider the rebuttal provided in (b)(3). As stated, the Benefits Review Board upheld the Administrative Law Judge's finding that the interim presumption had been rebutted under (b)(2), and did not address (b)(4). Hence, we shall focus on (b)(2).
 
 
 18
 Subsection (b)(2) provides that the interim presumption shall be rebutted if:
 
 
 19
 (2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work (see Sec. 410.412(a)(1) of this title).
 
 
 20
 Further, 20 C.F.R. Sec. 410.412(a)(1), referred to in subsection (b)(2), reads as follows:
 
 
 21
 Sec. 410.412 "Total disability" defined.
 
 
 22
 (a) A miner shall be considered totally disabled due to pneumoconiosis if:
 
 
 23
 (1) His pneumoconiosis prevents him from engaging in gainful work in the immediate area of his residence requiring the skills and abilities comparable to those of any work in a mine or mines in which he previously engaged with some regularity and over a substantial period of time (that is, "comparable and gainful work": see Secs. 410.424 through 410.426).
 
 
 24
 20 C.F.R. Sec. 410.426(d), included by reference in 20 C.F.R. Sec. 410.412(a)(1), reads as follows:
 
 
 25
 (3) Where a ventilatory study and/or a physical performance test is medically contraindicated, or cannot be obtained, or where evidence obtained as a result of such tests does not establish that the miner is totally disabled, pneumoconiosis may nevertheless be found totally disabling if other relevant evidence (see Sec. 410.414(c)) establishes that the miner has (or had) a chronic respiratory or pulmonary impairment, the severity of which prevents (or prevented) him not only from doing his previous coal mine work, but also, considering his age, his education, and work experience, prevents (or prevented) him from engaging in comparable and gainful work. (emphasis added).
 
 
 26
 The Administrative Law Judge held that under the language of the (b)(2) rebuttal, Kemmerer Coal Company could rebut the interim presumption by showing that Mitchelson was able to do his usual coal mine work, or comparable and gainful work, and went on to comment as follows:
 
 
 27
 This subsection [ (b)(2) ] has been interpreted to mean that rebuttal can be achieved by a showing that the claimant has no pulmonary or respiratory impairment, or that any pulmonary or respiratory impairment which the claimant does suffer is not totally disabling.
 
 
 28
 The Administrative Law Judge's interpretation of (b)(2) is in accord with the Benefits Review Board's interpretation of (b)(2). For example, in Sherry v. Tesone Coal Company, the Benefits Review Board commented as follows:
 
 
 29
 The interim presumption may be rebutted under Section 727.203(b)(2) if the evidence of record establishes the non-existence of respiratory or pulmonary impairment or that any respiratory or pulmonary impairment which claimant does have would not prevent claimant from performing his usual coal mine work.
 
 
 30
 Sherry, 4 BLR 1-377, 1-382 (Ben.Rev.Bd.1982), petition for review denied, 696 F.2d 985 (3d Cir.1982) (citations omitted).
 
 
 31
 Antedating Sherry, the Benefits Review Board in Skaggs v. Cannelton Industries, Inc., 3 BLR 1-434 (Ben.Rev.Bd.1981), reasoned that "[d]isability due to non-respiratory ailments will not prevent rebuttal under Section 727.203(b)(2) since disability due to non-respiratory causes is not compensable under the Act and need not be considered in determining claimant's work capability." The Board stated that "[i]f the evidence establishes that claimant suffers no respiratory or pulmonary impairment, the interim presumption is rebutted under Section 727.203(b)(2), no matter what disabling non-respiratory maladies claimant may have." Id. at 1-437.
 
 
 32
 Using his and the Review Board's interpretation of (b)(2), the Administrative Law Judge, after finding an interim presumption based on the results of ventilatory and blood gas studies, held that Kemmerer Coal Company had rebutted that presumption by medical evidence. Specifically, the Administrative Law Judge commented as follows:[N]o physician stated that he or she found the claimant to be totally and permanently disabled due to a pulmonary or a respiratory cause. Dr. Repsher was of the opinion that the claimant had no pulmonary impairment or disability caused by or aggravated by his employment. Drs. Null and Abaunza ... only made perfunctory statements that the claimant's numerical values "should make him eligible for black lung benefits" or that he "does qualify for black lung."
 
 
 33
 Additionally, in holding that Kemmerer Coal Company had also established rebuttal under (b)(4), the Administrative Law Judge made the following comment:
 
 
 34
 The x-ray evidence was not sufficient to cause the presumption to be invoked pursuant to Subsection (a)(1), and although Drs. Abaunza and Null stated that the claimant had a significant amount of obstructive airway disease, they did not state that he had pneumoconiosis. Dr. Guicheteau felt that the claimant's chronic bronchitis was not related to his history of coal mine employment (based on claimant's chest x-ray) and Dr. Repsher stated that he had found no evidence of pneumoconiosis.
 
 
 35
 As we read Mitchelson's brief, he does not challenge the Administrative Law Judge's interpretation of (b)(2), which, as indicated, is in accord with the Benefits Review Board's interpretation and is supported in this court by both Kemmerer Coal Company and the Department of Labor.[4] Such being the case, we will accept for the purposes of this case the Administrative Law Judge's interpretation of (b)(2).
 
 
 36
 What claimant does challenge in this court is the Administrative Law Judge's finding that the record showed that he was not totally disabled by pneumoconiosis arising in whole or in part out of his coal mine employment. Stated in reverse, claimant necessarily must argue that the record shows that he was totally disabled by pneumoconiosis arising, at least in part, out of his coal mine employment and that a contrary finding is not supported by "substantial evidence" as required by statute. We are not in agreement with claimant's analysis of the record.
 
 
 37
 On review, claimant would make much out of a supposed misunderstanding over the extent of his smoking history. At the hearing before the Administrative Law Judge, claimant testified that from 1941 to 1979, when on the advice of his physician he quit smoking, he smoked about two cigarettes per day. However, medical reports in evidence indicated that on prior occasions he had advised other doctors, including Dr. Repsher, that he had smoked a pack a day for 44 years. As the finder of the facts, the Administrative Law Judge was not required to believe claimant's statement that he smoked only two cigarettes a day for 44 years and could have found that his prior statements to doctors that he smoked a pack a day for 44 years was correct.
 
 
 38
 The Administrative Law Judge, however, based his finding that claimant was not totally disabled, because of pneumoconiosis arising out of coal mine employment, on the negative x-rays, the opinion of Dr. Guicheteau that claimant's chronic bronchitis was not related to his coal mine employment, and on Dr. Repsher's testimony that claimant did not have black lung.[5] Contrary to counsel's suggestion, Dr. Repsher did not stake his expert opinion on the premise that claimant smoked a pack of cigarettes per day, nor did the Administrative Law Judge base his findings on any "mistaken smoking history" of claimant. Additionally, the Benefits Review Board did not base its affirmance on the smoking history of Mitchelson.
 
 
 39
 We hold, therefore, that the Administrative Law Judge's finding that claimant was not totally disabled because of pneumoconiosis arising in whole or in part out of coal mine employment is supported by "substantial evidence," and, in such circumstance, neither the Benefit Review Board nor this court should disturb it. Claimant in 1984, the date of the hearing, may well have been totally disabled. The record supports the finding, however, that such total disability was not caused by pneumoconiosis, but, most probably, by a severe heart problem. We are not here concerned with whether claimant is eligible for some form of social security benefits. We are concerned with whether he is entitled to black lung benefits, which by statute and regulation are limited to those who are totally disabled by black lung arising out of coal mine employment.
 
 
 40
 On review, the Benefit Review Board's Decision and Order is affirmed.
 
 
 
 [1]
 Pneumoconiosis is "a chronic dust disease of the lung, and its sequelae, including respiratory and pulmonary impairments arising out of coal mine employment." 20 C.F.R. Sec. 727.202
 
 
 [2]
 Section 727.203 provides that a miner who has engaged in coal mine employment for at least ten years will be presumed to be totally disabled due to pneumoconiosis arising out of his coal mine employment if any one of the following four "medical requirements" is met:
 (1) a chest x-ray establishes pneumoconiosis;
 (2) ventilatory studies establishes chronic respiratory or pulmonary disease;
 (3) blood gas studies demonstrate an impairment in the transfer of oxygen from the lung alveoli to the blood; or
 (4) other medical evidence establishes a totally disabling respiratory or pulmonary impairment.
 
 
 [3]
 In its review of an administrative law judge's decision, the Board is not empowered to hold a de novo hearing. The Board is empowered to review the administrative law judge's findings of fact and conclusions of law and the findings under review are "conclusive if supported by substantial evidence in the record considered as a whole." 33 U.S.C. Sec. 921(b)(3) as incorporated in 30 U.S.C. Sec. 932(a)
 
 
 [4]
 Certain Courts of Appeal have interpreted (b)(2) to mean "total disability" arising out of any condition, and have held that (b)(2) is not limited to "total disability" caused by pneumoconiosis. In other words, these Circuits have held that any disability which prevents a miner from performing his usual coal mine work precludes a (b)(2) rebuttal. However, those courts have gone on to hold that "total disability" caused by something other than pneumoconiosis establishes a "rebuttal" under (b)(3). See Wright v. Island Creek Coal Co., 824 F.2d 505, 508 (6th Cir.1987); Sykes v. Director, Office of Workers' Compensation Programs, United States Dept. of Labor, 812 F.2d 890, 893-94 (4th Cir.1987); and Kertesz v. Crescent Hills Coal Co., 788 F.2d 158, 162 n. 5 (3d Cir.1986). But see an unpublished opinion of the Fourth Circuit, Layman v. Cannelton Industries, Inc., 9 BLR 2-151 (1986), where a rebuttal under (b)(2) was upheld despite a disabling non-respiratory cause
 
 
 [5]
 Unlike the medical expert in Micheli v. Director, Office of Workers' Compensation Programs, United States Dept. of Labor, 846 F.2d 632 (10th Cir.1988), Dr. Repsher testified at the hearing before the Administrative Law Judge and explained how the positive ventilatory and blood gas studies were not really inconsistent with his ultimate medical opinion that Mitchelson did not have black lung. In this regard Dr. Repsher testified that it is medically possible to distinguish between emphysema and black lung, the former being an "obstructive disease" of the lungs, and the latter being a "restrictive disease" of the lungs, and that the ventilatory and blood gas studies were consistent with "obstructive lung disease." Dr. Repsher also stated that even a pack of cigarettes a week for thirty or forty years was a "significant history of smoking," indicating that 30,000 to 45,000 cigarettes was not de minimis and, further, that for the cigarette smoker there is no "safe minimum." See also Garcia v. Director, Office of Workers' Compensation Programs, United States Dept. of Labor, 869 F.2d 1413 (10th Cir.1989) (insufficient evidence to rebut presumption of miner's total disability due to pneumoconiosis)