Charles Boyd **MALCOMB,** Petitioner,

v.

**ISLAND CREEK COAL COMPANY; Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

No. 93–1369.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 29, 1993.

Decided Feb. 2, 1994.

**ARGUED:** Roger Daniel Forman, Forman & Crane, Charleston, West Virginia, for appellant. Edward Waldman, United States Department of Labor, Washington, DC, for respondent.

Douglas Allan Smoot, Jackson & Kelly, Charleston, West Virginia, for respondent Island Creek Coal. **ON BRIEF:** Thomas S. Williamson, Jr., Sol. of Labor, Donald S. Shire, Assoc. Sol., Barbara J. Johnson, for appellate Litigation, United States Department of Labor, Washington, DC, for respondent Director.

Mary Rich Maloy, Jackson & Kelly, Charleston, West Virginia, for respondent Island Creek Coal.

Before ERVIN, Chief Judge, DONALD RUSSELL, Circuit Judge, and CLARKE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

## OPINION

DONALD RUSSELL, Circuit Judge:

Claimant Charles Malcomb appeals from the Benefits Review Board's denial of his claim for benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901–945. We find that the Board erred in its decision, and we reverse and remand for the Board to award benefits to Malcomb.

I

Malcomb was employed as a coal miner for almost thirty years before retiring in 1977. During his employment he worked in a variety of positions including loader helper, faceman, roof bolter, and general laborer. His last employer was the Island Creek Coal Company (Island Creek), for whom he worked as an outside utility man. Disabled from severe respiratory problems, he filed a claim for black lung benefits against Island Creek in 1979.

An administrative law judge (ALJ) heard Malcomb's claim in 1985. Medical opinions were presented from nine physicians, seven of whom had examined Malcomb and two of whom had reviewed his medical reports. The ALJ, in his first decision, denied benefits to Malcomb, but the Benefits Review Board (the Board) reversed this decision and remanded Malcomb's case back to him. On remand, the ALJ found, on the basis of the physicians' reports, that Malcomb qualified for the interim presumption, contained in 20 C.F.R. § 727.203(a), that he was totally disabled due to pneumoconiosis. The ALJ concluded, however, that Island Creek had successfully rebutted this presumption by affirmatively showing, under 20 C.F.R. § 727.-203(b)(3), that Malcomb's disability was not caused, even in part, by his coal mine employment.

To reach this conclusion, the ALJ relied exclusively on the opinion of Dr. Zaldivar, a physician who had not examined Malcomb. Zaldivar opined, based on his review of the medical reports on Malcomb prepared by the examining physicians, that Malcomb's respiratory disability was not due to his coal mine employment, but instead to asthma, smoking, and alcoholism. Zaldivar noted that part of Malcomb's disability was a low carbon dioxide diffusing capacity, but determined that this low diffusing capacity could be attributed to alcoholism, and also possibly in part to emphysema caused by his smoking, instead of to coal mine employment. None of the physicians who examined Malcomb, on whose reports Zaldivar based his opinion, had even diagnosed Malcomb with alcoholism, much less suggested it as a possible cause of Malcomb's disability. In fact, the only mention of Malcomb's alcohol intake by a physician who had examined him was a statement in a medical report of Dr. Duffield, who indicated, after he had examined Malcomb, that Malcomb "use [sic] to drink a lot" before quitting drinking in 1979. The ALJ nonetheless adopted Zaldivar's opinion, not placing any weight on the reports of the seven examining physicians.

Malcomb was not foreclosed from benefits, however, by the ALJ's rejection of his section 727.203 claim. Under this Court's opinion in *Taylor v. Clinchfield Coal Co.*, 895 F.2d 178 (4th Cir.1990), the ALJ found that Malcomb satisfied 20 C.F.R. § 410.490, and, thus, awarded Malcomb benefits.

Island Creek appealed to the Board the ALJ's holding that Malcomb was entitled to benefits under section 410.490. Malcomb did not cross-appeal the ALJ's decision that he did not qualify for benefits under section 727.203, reasoning that such a cross-appeal was unnecessary because he had received, under section 410.490, all the relief he had requested. While Island Creek's appeal was pending before the Board, the Supreme Court issued *Pauley v. BethEnergy Mines, Inc.*, —— U.S. ——, 111 S.Ct. 2524, 115 L.Ed.2d 604 (1991), an opinion which reversed, *sub nom.* this Court's decision in *Taylor* and mandated a finding that Malcomb was not entitled to benefits under section 410.490.

Malcomb conceded that his recovery of benefits under section 410.490 was precluded by *Pauley*. He sought to argue to the Board, however, that the ALJ's decision awarding him benefits should be affirmed because the ALJ had erred in finding that Island Creek had established rebuttal under section 727.203(b)(3) and, thus, he was enti-

tled to benefits under section 727.203. The Board refused to consider Malcomb's argument on the ground that he had failed to file the cross-appeal necessary to contest the ALJ's section 727.203 finding.

## II

The Board's rules regarding cross-appeals are found at 20 C.F.R. §§ 802.201(a)(2), 802.-205(b) and 802.212(b). Section 802.201(a)(2) provides that "[w]hen a decision or order is favorable to a party (i.e. the prevailing party), the prevailing party may file a cross-appeal pursuant to § 802.205(b) to challenge any adverse findings of fact or conclusions of law in the same proceeding." 20 C.F.R. § 802.201(a)(2).[1] Section 802.212(b) indicates that if such a cross-appeal is not filed, "[a]rguments in [the] response brief[ ] [of the prevailing party below] shall be limited to those which respond to arguments raised in petitioner's brief and to those in support of the decision below." 20 C.F.R. § 802.212(b).

The Board determined that these regulations required that Malcomb file a cross-appeal in order to challenge the ALJ's find-

---

**1.** Section 802.205(b) merely sets forth filing deadlines for cross-appeals. 20 C.F.R. § 802.-205(b).

**2.** The level of deference ordinarily owed to the Board's interpretation of regulations such as these is a difficult question. Deference is generally not accorded to the Board's interpretation of regulations, *see Bethlehem Mines Corp. v. Massey*, 736 F.2d 120, 123 n. 1 (4th Cir.1984); *Director, OWCP v. Ball*, 826 F.2d 603, 604–05 (7th Cir. 1987); *cf. Potomac Electric Power Co. v. Director, OWCP*, 449 U.S. 268, 278 n. 18, 101 S.Ct. 509, 514 n. 18, 66 L.Ed.2d 446 (1980) (stating that deference should not be accorded to the Board's interpretation of a statute); *Director, OWCP v. Newport News Shipbuilding and Dry Dock Co.*, 8 F.3d 175, 179 (4th Cir.1993) (same). *But see Fleetwood v. Newport News Shipbuilding & Dry Dock Co.*, 776 F.2d 1225, 1228 (4th Cir.1985) (holding, contrary to our general rule, that Board's interpretation of a statute is entitled to deference). This general rule of not deferring to the Board's interpretation of regulations, however, was adopted in cases where the regulations that the Board had interpreted addressed the substantive law governing claimants' recoveries. The regulations in this case, by contrast, set forth the Board's own procedural rules. If deference to the Board's interpretation of regulations is ever appropriate, it is when the regulations interpreted by the Board involve its own procedural rules. *See Director, OWCP v. Hileman*, 897 F.2d

ing that he was not entitled to benefits under section 727.203. It reasoned that Malcomb's argument that the ALJ erred in its section 727.203 finding was not one which "respond[ed] to arguments raised in petitioner's brief" nor one which was "in support of the decision below," 20 C.F.R. § 802.212(b), and, thus, could not be considered absent a cross-appeal. We are authorized to review the Board's conclusion that a cross-appeal was necessary under 33 U.S.C. § 921(c).

■ Our first step in conducting this review is to determine whether to accord deference to the interpretation of the cross-appeal regulations applied by the Board in this case.[2] In making this determination, we are struck by the inconsistency between the interpretation applied by the Board here and the interpretations the Board has applied in cases prior and subsequent to this case. This inconsistency is of sufficient importance that we will examine it in some detail.

In *King v. Tennessee Consolidated Coal Co.*, 6 Black Lung Rep. 1–87 (Ben.Rev.Bd. 1983),[3] an ALJ had found that the employer

---

1277, 1279 n. 1 (4th Cir.1990) (according deference to the Board's interpretation of regulations that set forth its filing deadlines for en banc petitions); *cf. Gray v. Director, OWCP*, 943 F.2d 513, 517 (4th Cir.1991) (giving deference to the Board's interpretation of a regulation that "regulat[ed] the day-to-day conduct of processing and adjudicating claims" when that interpretation had been applied consistently without objection from the Secretary).

We need not reach the issue of whether deference should usually be accorded to the Board's interpretation of regulations describing its own procedure, however, because, as we explain *infra*, the interpretation of its cross-appeal regulations that the Board applied in the case at bar was so inconsistent with the interpretations of these regulations it has applied in other cases that deference could not be properly accorded here to the Board's interpretation.

We also need not address whether to accord deference to the interpretation of these regulations asserted by the Director, Office of Workers' Compensation Programs (the Director), because, examining the regulations independently, *see infra*, we reach the same interpretation that is urged by the Director.

**3.** We do not attempt to document all of the Board's opinions interpreting its cross-appeal regulations, but only a sufficient number to demonstrate adequately that the interpretation of

had successfully rebutted the claimant's section 727.203 interim presumption and denied the claimant's claim. The Director appealed, arguing that the ALJ had improperly weighed certain evidence in finding the presumption rebutted. The employer, without filing a cross-appeal, sought to argue that even if the ALJ had so erred, the ALJ's decision should be affirmed because the evidence, properly weighed, was sufficient for rebuttal. The Director contended that, as the employer had not cross-appealed, the Board lacked jurisdiction, under the regulations governing its cross-appeals, to consider this argument.

The Board rejected the Director's contention, finding it "inconsistent with sound appellate procedure." *Id.* at 1–91. For guidance in interpreting the cross-appeal regulations, it examined federal appellate court practice and stated that, under the federal practice, "[i]f [the appellee] is fully satisfied with the order actually rendered, he need not file a cross-appeal, even though he seeks to argue on appeal in support of the judgment that the administrative law judge erred with regard to a particular ruling." *Id.*

The Board held that "[t]he foregoing principles apply with equal force to appeals before the Board," *id.*, and interpreted its cross-appeal regulations to indicate that "[i]f the party prevailing below supports the result of the decision, . . . then it may [without cross-appealing] advance any argument . . . which will maintain the *status quo* of the decision," *id.* Because the employer's argument "[did] not involve a change in the result of the decision," *id.* at 1–92, but merely "addresse[d] the rationale adopted by the administrative law judge for reaching his conclusion," *id.*, the Board found that its cross-appeal regulations "[did] not require [the] employer to file a cross-appeal," *id.*

The Board followed the interpretation of its cross-appeal regulations it had set forth in *King* in *Whiteman v. Boyle Land and Fuel Co.*, 15 Black Lung Rep. 1–11 (Ben.Rev.Bd. 1991) (en banc).[4] There an ALJ had denied

a claimant's section 727.203 claim but awarded him benefits under section 410.490, prompting the employer to appeal. The Director, without cross-appealing, sought to argue to the Board that the ALJ had erred in his section 727.203 holding. Because the Director's argument supported the ALJ's decision to award benefits, and thus "provided an alternative basis upon which the Board could affirm [the ALJ's] ultimate disposition," *id.* at 1–18, the Board found that it had jurisdiction under its cross-appeal regulations to consider the Director's argument, citing *King, id.*

When it revisited these regulations the next year in the case at bar, however, the Board, without explanation, failed to follow the interpretation of its cross-appeal regulations it had established in *King* and applied in *Whiteman.* After an ALJ had rejected Malcomb's section 727.203 claim but awarded him benefits under section 410.490, Island Creek appealed. Malcomb attempted, without cross-appealing, to contend to the Board that the ALJ's decision should be affirmed because the ALJ had erred in his rejection of Malcomb's section 727.203 claim. Although the case at bar was identical in all relevant respects to *Whiteman,* the Board, without acknowledging *Whiteman* or *King,* interpreted its cross-appeal regulations differently and refused to consider Malcomb's contention.

The Board has returned, since addressing the case at bar, to applying the interpretation of its cross-appeal regulations set forth in *King.* *Hale v. Island Creek Coal Co.,* BRB No. 88–2251 (Ben.Rev.Bd. Apr. 27, 1993) (unpublished), is yet another case where the ALJ rejected a claimant's section 727.203 claim but awarded him benefits under section 410.490, prompting the employer to appeal. The claimant, without cross-appealing, sought to argue to the Board that the ALJ's decision should be affirmed because the ALJ had erred in its section 727.203 finding. The Board, without explanation again, applied the opposite interpretation of its cross-appeal regulations that it had ap-

these regulations applied by the Board in the case at bar was inconsistent with the interpretations it has applied in other cases.

4. The Board's cross-appeal regulations were amended after *King* and prior to *Whiteman,* but

these amendments only served to "clarify," and not to change substantively, the Board's cross-appeal rules. 52 Fed.Reg. 27,289 (1987).

plied a year earlier in the case at bar, electing to consider the claimant's argument. *Id.,* slip op. at 2–3 n. 3.

■ An agency's interpretation of its own regulations is normally entitled to judicial deference. *Pauley,* ——U.S. at——, 111 S.Ct. at 2535. We accord this deference to the agency's interpretation even if the agency has made considered changes in that interpretation because "[a]n initial agency interpretation is not instantly carved in stone" and the agency should be free to "consider varying interpretations and the wisdom of its policy on a continuing basis." *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 863–64, 104 S.Ct. 2778, 2791–92, 81 L.Ed.2d 694 (1984). When the agency's varying interpretations of a regulation have not been the result of the agency making considered changes in its policy, but rather of the agency simply acting inconsistently without explanation, however, "the case for judicial deference is less compelling." *Pauley,* ——U.S. at——, 111 S.Ct. at 2535; *see also INS v. Cardoza–Fonseca,* 480 U.S. 421, 446 n. 30, 107 S.Ct. 1207, 1221 n. 30, 94 L.Ed.2d 434 (1987).[5] Moreover, if the agency's record of unexplained inconsistent interpretation is particularly egregious, the interpretation that the agency applied in the case before the court is entitled to no deference. *BankAmerica Corp. v. United States,* 462 U.S. 122, 130–32, 103 S.Ct. 2266, 2271–72, 76 L.Ed.2d 456 (1983) (according no deference to agencies' interpretation of a statute that reversed, without adequate explanation, the interpretation employed by these agencies for sixty years); *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 858 n. 25, 95 S.Ct. 2051 n. 25, 44 L.Ed.2d 621 (1975) (giving "no special weight" to the Securities and Exchange Commission's interpretation of a statute because it "flatly contradict[ed],"

without explanation, the Commission's earlier interpretation); *see also De Osorio v. INS,* 10 F.3d ·1034, 1042 (4th Cir.1993) (acknowledging that, with agency statutory interpretation, there is a "type of inconsistency which would warrant rejection of deference").

We find the interpretation of its cross-appeal regulations that the Board applied in the case at bar to have been shockingly inconsistent with its prior and subsequent interpretations. The Board explained in detail its interpretation of its cross-appeal regulations in *King.* At no point prior to the case at bar had it applied any other interpretation or even questioned the interpretation set forth in *King;* in fact, it had even reaffirmed its *King* interpretation a year earlier in *Whiteman.* Yet, in the case at bar, it reversed this interpretation of its cross-appeal regulations without offering any explanation and without even acknowledging that it was doing so. As a result, we find that it would make little sense to accord deference to the interpretation of its cross-appeal regulations the Board applied in the case at bar, and we decline to do so.

■ We have little trouble determining independently the meaning of these cross-appeal regulations. An appellee before the Board may, without filing a cross-appeal, make any argument "in support of the decision below." 20 C.F.R. § 802.212(b). In this case, the Board interpreted this language to require that arguments made without cross-appeals support the ALJ's reasoning in reaching his decision. We find that the better interpretation of section 802.212(b)'s language, however, is that the argument made without cross-appeal must be in support of *"the decision "* of the ALJ, but not necessarily in support of the ALJ's *reasoning in reaching his decision.*

---

**5.** We recognize that a statement in *Hicks v. Cantrell,* 803 F.2d 789 (4th Cir.1986), may be read to the contrary. There we stated that "although the [agency] may have varied [its] interpretation of [the statute] a number of times, we must accord [its] interpretation deference so long as that interpretation is reasonable." *Id.* at 793–94. To the extent that this statement means that we must accord our normal deference to an agency's interpretation even when that interpretation is inconsistent with the agency's prior interpretations, however, the statement conflicts with the Supreme Court's later discussions of deference

in *Pauley,* ——U.S. at——, 111 S.Ct. at 2535 ("As a general matter, of course, the case for judicial deference is less compelling with respect to agency positions that are inconsistent with previously held views."), and *Cardoza–Fonseca,* 480 U.S. at 446 n. 30, 107 S.Ct. at 1221 n. 30 ("An agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is entitled to considerably less deference than a consistently held agency view.") (quotation omitted). Construed in this manner, therefore, the statement in *Hicks* is no longer good law.

The context in which the Board's cross-appeal regulations were adopted demonstrates the correctness of this interpretation. It has been settled in the federal courts since at least the 1920's that an "appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court." *United States v. American Ry. Express Co.,* 265 U.S. 425, 435, 44 S.Ct. 560, 564, 68 L.Ed. 1087 (1924) (Brandeis, J.); *see also Massachusetts Mut. Life Ins. Co. v. Ludwig,* 426 U.S. 479, 480–81, 96 S.Ct. 2158, 2159, 48 L.Ed.2d 784 (1976). Had the Secretary of the Department of Labor, in promulgating the regulations setting forth the Board's cross-appeal rules after the Board was established in 1972, intended these rules to differ from this long-settled federal cross-appeal practice, we believe that the regulations would contain some indication of this intention. That the regulations contain no such indication, but instead are best read to set forth cross-appeal rules identical with this federal practice, is strong evidence that they are intended to adopt this practice.

Moreover, this interpretation accords with those of the other courts of appeals to address this issue. *Hansen v. Director, OWCP,* 984 F.2d 364, 367 (10th Cir.1993); *Dalle Tezze v. Director, OWCP,* 814 F.2d 129, 132–33 (3d Cir.1987).

We, therefore, conclude that, under the Board's cross-appeal regulations, an appellee need not cross-appeal in order to make an argument that supports the decision—or, stated differently, the result—reached by the ALJ, but attacks the reasoning used by the ALJ in reaching his decision.

By arguing that the ALJ erred in rejecting his claim for benefits under section 727.203, Malcomb sought to support the result reached by the ALJ—awarding him benefits. As a result, the Board's cross-appeal regulations did not require Malcomb to cross-appeal in order to press this argument, and the Board erred in not considering it on the ground that he failed to do so.

### III

■ Remand to the Board is our normal course where, as here, we are faced with an issue that the Board has not yet considered. *See, e.g., Adkins v. Dept. of Labor,* 824 F.2d 287, 289 (4th Cir.1987). Because we find that the Board could only properly reverse the ALJ's rejection of Malcomb's section 727.203 claim, however, remand on this issue is unnecessary. *See Freeman United Coal Mining Co. v. Anderson,* 973 F.2d 514, 518 (7th Cir.1992); *Kowalchick v. Director, OWCP,* 893 F.2d 615, 621 (3d Cir.1990); *Warman v. Pittsburg & Midway Coal Mining Co.,* 839 F.2d 257, 257 (6th Cir.1988).

Island Creek concedes that Malcomb is entitled to benefits unless it affirmatively rebuts the presumption, established under section 727.203(a), that Malcomb was totally disabled due to pneumoconiosis. Island Creek attempted to make this rebuttal under section 727.203(b)(3), and thus had to present evidence that "*rule[d] out* the casual [sic] relationship between the miner's total disability and his coal mine employment." *Bethlehem Mines Corp. v. Massey,* 736 F.2d 120, 123 (4th Cir.1984) (emphasis in original). The ALJ found that Island Creek made such a showing, and thus established rebuttal under section 727.203(b)(3), by introducing the report and testimony of Dr. Zaldivar, which indicated that Malcomb's disability was caused by asthma, smoking, and alcoholism, rather than his coal mine employment. The Board could only properly affirm the ALJ's finding that Island Creek established section 727.203(b)(3) rebuttal if the finding was "supported by substantial evidence in the record considered as a whole." 33 U.S.C. § 921(b)(3); *Zbosnik v. Badger Coal Co.,* 759 F.2d 1187, 1189 (4th Cir.1985).

■ Malcomb and the Director contend that under *Massey,* Island Creek's evidence was insufficient to support a finding that section 727.203(b)(3) rebuttal was established. We agree. In *Massey,* the employer sought to establish section 727.203(b)(3) rebuttal by presenting testimony from a physician who had not examined the claimant. This physician stated that, based on his review of medical reports on the claimant prepared by examining physicians, the claimant's total disability was caused by cigarette smoking, and not by his coal mine employment. None of the physicians who had ex-

amined the claimant and prepared the medical reports had addressed the possibility that cigarette smoking caused the claimant's disability. This Court rejected the employer's argument that this non-examining physician's testimony established section 727.203(b)(3) rebuttal, stating: "A *non-examining* physician's opinion on matters not addressed by *examining* physicians is insufficient as a matter of law to rebut [the section 727.203] presumption." *Massey*, 736 F.2d at 125 (emphasis in original). *See also Turner v. Director, OWCP*, 927 F.2d 778, 779–80 (4th Cir.1991) (following *Massey* on similar facts).

The facts here are almost identical to *Massey*. Island Creek's only evidence to establish section 727.203(b)(3) rebuttal, and the only evidence relied on by the ALJ in finding that rebuttal was established, was the testimony of Dr. Zaldivar, a non-examining physician. Zaldivar stated that Malcomb's disability was caused by asthma, smoking and alcoholism, rather than by his coal mine employment. The attribution by Zaldivar of the disability to alcoholism was essential to his conclusion that Malcomb's disability was not caused by his coal mine employment. Part of Malcomb's disability was that he had a low carbon dioxide diffusing capacity. As Zaldivar concedes, the only complete explanation for Malcomb's low carbon dioxide diffusing capacity, other than pneumoconiosis caused by his coal mine employment, was alcoholism.[6] But no other examining physician diagnosed Malcomb with alcoholism, much less suggested the possibility that Malcomb's disability was caused by alcoholism.

Zaldivar's conclusion that Malcomb's disability was not caused by his coal mine employment was, thus, based on a "matter[ ] not addressed by *examining* physicians." *Massey*, 736 F.2d at 125 (emphasis in original). As a result, it was "insufficient as a

matter of law to rebut [the section 727.203] presumption," *id.*, and the Board could only properly find, were we to order remand, that the ALJ's finding of rebuttal must be reversed.[7] Malcomb is, therefore, entitled to benefits.[8]

## IV

For the reasons stated, we reverse the order of the Board and remand with instructions for the Board to award benefits to Malcomb.

*REVERSED AND REMANDED.*

---

**6.** Zaldivar stated that Malcomb's low carbon dioxide diffusing capacity could also be due in part to emphysema caused by his smoking, but he acknowledged that the low diffusing capacity could not be fully explained by emphysema.

**7.** We are aware that the Board, when it first remanded Malcomb's case to the ALJ, made a finding that conflicts with our analysis. The Board found that "examining physicians of record ... [had] addressed the issues addressed in Dr. Zaldivar's opinion." This is not accurate. While the physicians who examined Malcomb

did address some of the issues Zaldivar considered in his opinion, namely Malcomb's smoking and asthma, none addressed his supposed alcoholism.

**8.** Malcomb also argues that the ALJ erred in refusing to reopen the case after he issued his decision so that Malcomb could submit additional evidence. Our ruling in Malcomb's favor obviously moots this argument and we decline to consider it.